Case Number 09-1558, Yant v. United States Mr. Burke. Thank you, Your Honor. May it please the Court. Counsel. My name is John Burke. I represent the appellants in this case, which is an appeal of the decision which granted summary judgment against my clients, who are 35 years practitioners practicing at Tennessee VA. The essence of this case is that the trial court determined that because the nurse practitioners consisted of both males and females, and the physician's assistants consisted of males and females, that there could be no equal pay violation. Well, not exactly. I mean, she sort of set a standard about what portion would be over that standard and what portion above. She didn't say, just because one of the groups contains one male and one female won't pass the question. The question to you, which is, what is the standard? Well, Your Honor, first of all, I think you have to look at the group that's being underpaid. In this case, the group that was being underpaid was 80% women. So what is the standard for each one? Predominantly, your complaint refers to the predominant women and predominant people. Do we have to say that it's an appropriate class because it's predominantly female? The Act, Your Honor, doesn't use any of those words. It doesn't use predominantly. It doesn't use substantially. In fact, the United States Supreme Court in the Corning case specifically said, just because there are the opposite gender in this other class doesn't eliminate it from an Equal Pay Act claim. So what is the standard? Well, I don't think that any court has specifically set a standard that it has to be X number or Y number. Here, you have a case where 80% of the females are nurse practitioners. Would you agree that something must have happened with one of them? In the group that's being discriminated against? Yes, I would agree. So what is the standard, 51%? In the group that's being discriminated against, yes. But the Supreme Court in Corning also said that what you can't do is lower the pay of the higher paid group to make a lower paid group more equal. That's the same thing that would be going on here is that when you have the females, the nurse practitioners who are 80% females and their pay is substantially less than the pay of the physician assistants who are historically and substantially and predominantly male. So what the court should do is they should say that you are violating the Act by bringing, you should bring the wages up and pay equal wages for equal work. Not have one group that's predominantly male versus another group that's predominantly or substantially female who is paid substantially less. Can I ask you a question? You're right, the standard doesn't create any of these standards. It doesn't use those words to correct you. But it does have a standard for quantification cases, does it not? It does. And what is that standard? The standard essentially is that an employer must pay the same wages to employees of the opposite sex for equal work and jobs that require equal skill and effort and responsibility. It says on the basis of sex. You have to establish this disparate treatment of people, assuming there is some perjudging state, is on the basis of sex. Yes, Your Honor. So how do you do that with substantially mixed groups? Let's assume the nurse practitioners were 49% male and 51% female. And let's assume physician's assistants were 51% male and 49% female. Do you think you've established a quantification case and seen this categorization in one or the other on the basis of sex? Well, Your Honor, in this case, the nurse practitioners are nurses. They're traditionally female. Is it possible for you to answer my question? Sure, I'm sorry. Do you agree that you would not have established a quantification case? If it was 50-50 in both groups? 51-49. Women are 51% of the nurse practitioners and 49% of the physician's assistants. I think then you still have a majority. I think the line would have to be when it's 50-50. So you think you've established that it's on the basis of sex? Yes. If it's not 50-50, I believe so, Your Honor. I think that the fact of the matter is, in this case, there is a traditional female job. A nurse. The PAs... What do you mean is it traditionally female? I know you used the traditional historic female. What do you mean by that? Do you mean it was always more women? I don't know what traditional means. Well, in fact, nurses first were almost all women. Is that what you mean? Yes. And throughout the history, the group has started to merge in terms of males and females. Just like the physician's assistants, which came out of the Navy, it was military, it was traditionally the male job. How far do we go back in looking at what's historically relevant and what is not? Let's assume that, yes, nurses were historically disproportionately female, but since 1970, there's been a 49-15 split. Well, I don't think that your statistics would be correct. I think you have to look back through the history in order to discern what the rationale for these payments are. Congress enacted this because there was historical discrimination against females in employment, and they wanted to even the bar on it. And so they were looking back at the history. Even today, there's more female nurses than there are male nurses. There are certainly more female nurse practitioners. But the EPA is not exclusive. It's not limited to female versus male. I mean, you could have the flip side of this case, but you're not. Yes, you're absolutely right. What the Equal Pay Act set out to correct is unequal payment for equal work. So if there was jobs that males were being underpaid for. Well, unequal payment for equal work on the basis of sex. Yes, Your Honor. So in the same situation, nurse practitioners and PAs, they do the exact same work in the VA. They are advertised the same. Everything's the same. So if you had a group of males who were being underpaid for doing the same job, they would have an Equal Pay Act claim as well. And in fact, there is a case pending in the lower court that is exactly that issue. Is there any impediment to males or females going into either of these categories? Today, Your Honor, I don't believe there is any impediment. Well, was there an impediment in the past? Well, certainly. What was it? Almost all the nurses, people who went to nursing schools, were females. Was there a rule in the nursing school? I don't know that there was a rule that said that, but that was the case. There were a lot of male nurses. They were a small number, but on the other side of the equation, they started out in the Navy or the other service, because it was primarily male. They didn't have that many females in the service. That's exactly right, Your Honor. But there wasn't a discrimination thing. It was just a question of what you're bringing here also. Is there anything that would prevent either males or females from going into either of these categories? I don't think there's any rule anywhere that prohibits. When did it change? You're saying it wasn't. Your Honor, I'm not saying there ever was a written rule. There just was a historic rule that women were mostly acting as nurses and the PAs were mostly men for the exact same reason that you just mentioned. It came out of the military, and there that's what it seems to show here. Yes. And we all know that the military is primarily male until fairly recently. Correct. Was that a discriminatory thing? That the military was primarily male? I think so. One could argue that at one point, if women were excluded from the military, that that would then be discriminatory. There are a lot more women in the military today. What about the differences in the educational requirements? Have those been completely eliminated? No, Your Honor. In fact, those differences is what boggles my mind about this case. The nurse practitioner, an NP, has to have a master's degree. A physician's assistant isn't even required to have an associate's degree. But if a physician's assistant or so are paid more, what's to stop the nurse practitioner from saying, never mind, just change my place? Well, first of all, you can't just ask them to change your title. You have to have qualifications to be a nurse practitioner, meaning you have to have a nursing degree and a master's degree, and then there's qualifications to be a physician's assistant. But you're telling us the physician's assistants or so are paid more? Yes, they are. In this particular locality? In this locality, that is the case. Many localities across the country, these things have been corrected and the physician's assistants and the nurse practitioners are paid essentially the same for doing the exact same job. I had this exact same case in Cleveland, Ohio, that went to the Sixth Circuit, and the Sixth Circuit is essentially the same facts. It's against the VA. It involves nurse practitioners and a physician's assistant being paid different pay. I see the case as different. You're talking about the Bette Wilson case? Yes, Your Honor. In Bette Wilson, as I recall, over the nurse practitioners over 95% female. And the physician's assistants over 85% male. You are correct. Don't you think those numbers are specific? One ought to at least think about the difference in the numbers with respect to our case. Certainly there are differences in those numbers, and part of the difference is the time. These two groups are merging together in terms of the breakdown of the gender of the two classes, but still 80% of the nurse practitioners are females. That's a huge percentage. But you told me earlier, I thought that even if it were only 51% nurse practitioners being female, and 49% of physician's assistants being female, you would say that you could defeat some of the judgment in the prior case of gender discrimination. Yes, Your Honor. We don't have to deal with those extraordinary numbers. You're asking us, you're telling us that's essentially the standard. Well, I don't know what the standard is, Your Honor, because no court and the actual legal pad doesn't tell us what it is. You're advocating today that we say it is more than 50%. Well, what I'm advocating here is that it's a factual question. I'm asking a question. You are asking us to set the standard that you've got over 50%, right? I'm asking you that in this case, Your Honor, I believe that 80% females of nurse practitioners, I think that that is enough to equate with the rhinofacial case. Just process me, my opinion on that. That's not the facts in this case. Aren't 51%. It's 80%. We don't have to look at both categories, though? I mean, what is the inquiry here? I mean, let's assume females were 99% of nurse practitioners. That doesn't end the inquiry. We also have to look at the percentage breakdown of the category they're charging as having been paid more on the basis of sex, right? I'm not so sure that that really has to be the focus. I think the focus is on the percentage of the lower-paid job. Just like in cloning... So you're saying if nurse practitioners are 99% female, they can challenge physician's assistants even if they're 80% physician's assistants are female? I don't think I would say that. So you have to look at the two together? I think somewhat, but the focus should be on the job being paid less. And in this case, there are almost 40, 50, 50 in the physician's assistants. Well, they're at 60, 40. What? I mean, Andy, I believe it is, Your Honor. But 60% is still a vast majority. I see that my initial time is up. Yes, but please answer this point. If you could ask the question one more time, please. No, you're good. I think you did it. Okay. We're going to take it from the other side. We'll save you a lot of time. May I please deport? The Equal Pay Act is not going to pay everyone exactly the same amount. The issue in this unusual case is whether the Equal Pay Act guarantees equal wages for nurse practitioners and physician assistants without regard for gender. Gender is the attribute, and I don't think anyone is disputing that historically has accounted for the difference in pay between these two classes. Whatever that composition may have been. Your Honor, whether that's true or not, based on our experience, there's no evidence of that in the record. The only evidence in this record that was found by the trial court, undisputed at that time and undisputed on appeal, is that you have two classes of employees with substantial participation. This was the fact finding. Substantial participation of both sexes in each class, and that there was no suggestion whatsoever of any token hiring to avoid Equal Pay Act allegations. Leaving aside Representative Goodell's statement in the legislative history, which you repeated in the slide, where are we getting substantial participation? Well, Your Honor, it raises an important and difficult question as to where we draw the line. It's obvious that if a group of employees is virtually 50-50 male and female, and they compare their pay to another group of employees that's 50-50 male and female, obviously there can't be an Equal Pay Act violation. It just can't be the case. But conversely, if it's 99% women in one group, and 99% males in another group, I think we would all agree that in that extreme factual situation, it would be possible to make an Equal Pay Act claim. But if there were 80% in each group as well, it's very hard to say that there's equality there. Well, Your Honor, what's particularly unusual about this case is that the female nurse practitioners are claiming gender discrimination relative to the male physician assistants, while at the exact same time, the male nurse practitioners are saying they're being discriminated on the basis of their gender relative to the female physician assistants. And so I think, to get back to your question, Judge Prost, the question is, where do we draw the line? This is a difficult line-drawing exercise. And if we are to give, if we are to honor the intent of Congress, clearly stated in the legislative history, but also expressed in the language of the statute, it only prohibits sex discrimination. Clearly, we would never say that age discrimination is discrimination against people of all ages. And religious discrimination is discrimination against people of all religions. We would never say those things. And equally, we would never say that sex discrimination is discrimination against people of both genders. You have the male... I'm having trouble understanding that. We do have reverse discrimination, so that sex discrimination in males versus females or females versus males. On the age question, there is a statutory age limit that establishes below 40 if you're a protected class and under 40 you're not. So I'm a little unclear. Can I move on to another question? Sure. One of the things that's making this case more difficult for me is, even if we accept the notion of substantial participation, one, we have to then apply that, and that's another semi-subjective analysis of where we apply why. Even if we accept a particular test, we then have to apply it. And the other question I have, though, is the District Court judge here, the Court of Claims judge here looked at both classes. And so am I right that it's the government's position that you have to look at both classes in order to make a determination? Yes, Your Honor. In other words, if the first class is 80-20, or let's assume it's something we could agree is substantially female, 95-5, and the nurse practitioner and the physician's assistant is 51% male, 49% women, female, you would not be here, right? Because you would say that both classes don't need a substantial participation test. Your Honor, I would not characterize the test in quite that way. Let me share what I think the trial court's reasoning was and what I believe the proper test should be. When you have two mixed-gender classes of employees... Mixed-gender meaning there's one or the other in any of them, even one. Precisely. Just from a starting point, two mixed-gender classes... Forget about the breakdown just for a moment. If there are two mixed-gender classes being compared to one another, then for purposes of the Equal Pay Act and interpreting the term sex discrimination, we would submit that the Equal Pay Act, 9 times out of 10, should not have any application in that case because the Equal Pay Act was never intended to apply to pay disparities between two mixed-gender groups. Just... Your Honor, reference Mr. Goodell's statements in the legislative history. These are not just stray colloquies in the record. Representative Goodell was the leading sponsor of the Act. He recognized that this was a colloquy. I understand that. I have a little problem with Mr. Goodell because in Corning, the Supreme Court, in another context, kind of didn't like looking at those statements and looked at other portions of the legislative history of the record, so it gives me some reservation to realize so heavily Mr. Goodell's statement. Do you recognize what I mean? Your Honor, I don't think that the Supreme Court in any way in Corning said that Representative Goodell's statements were not authoritative, but rather that under the facts presented in that Corning case, his remarks in the legislative history were not controlling. In Corning, unlike this case, you had a situation where there was a proven period of discrimination. There were day shift workers who were all women and night shift workers who were all men for a period of two years. I believe it was 1964 and 1966. And then, in 1966, the employer opened up the night crew so that women could participate there, but the day crew was still completely women and still underpaid. And the argument that was made to the Supreme Court was has the employer remedied the Equal Pay Act violation already demonstrated by separating the men and the women out 100% in each group? Can the employer remedy that violation just by opening up one group, the higher paid group to men and women? And the Supreme Court said no. In a subsequent case, which is cited in our briefs, the Supreme Court noted that Representative Goodell was the main exponent, the leading sponsor of this bill. I'd like to go straight with that. Why don't you go back to the point you were making, which I'm interested in hearing about. Where are we starting? What are the analytical frameworks? Sure. We were talking about what the appropriate statement should be. I recognize that this is an issue of first impression. It's an important case, and we want to get it right here. But with this narrowly drawn statute that is only designed to address sex discrimination, it cannot apply to pay disparities between mixed gender groups that can't be sex discrimination because we have this anomalous situation where the men are claiming, the male nurses are claiming sex discrimination at the exact same time that the female nurses are claiming the sex discrimination. Why aren't the men? Pardon? Why aren't the men claiming? Your Honor, they are. There are folks listed in the caption named Robert and David and John. Well, I assume the theory, not that I necessarily buy it, but I assume the theory would be, let's assume a class is 98% female. Sure. And there are two men. The men I think arguably could be in the class because they claim that because this is predominantly a female category, my pick too is being held down. So, I mean, there's mixed and there's mixed, but I assume that's the theory, right? Sure. And so, the starting point is if you have two mixed gender groups, we submit that the Equal Pay Act should not apply unless. And the unless is if there is a genuine issue of whether there is a token hiring to avoid the Equal Pay Act's application. So if for some reason you had a case where the plaintiffs were able to come forward with evidence that say the it was all women and one male in a class of employees, and the plaintiff in that case, the employee was able to come forward with evidence that that male was hired because the employer wanted to avoid their Equal Pay Act obligations. Well, certainly we would never argue that Congress intended for the Equal Pay Act not to apply to that situation. So you're taking a position out of the district court. I mean, you're not saying that the standard is predominantly. You're not saying the standard is substantial participation. You're saying the standard is 100% in the absence of tokenism, which you're defining as really something that the minor had. Well, actually, if you'll bear with me, I am arguing what the district court said, which is if it's not a token, it's substantial participation by both sexes. So there's sort of split sides of the same concept. I shouldn't look at the standard being that there's never been discrimination. As you said, there's no record of it in either of these categories ever. There are no impediments to anybody going to either of these categories. They're free to go. You want anything now. Then why should it matter whether there's 99% or 50% or 2%? What's the... Well, that's what I think... Why don't you get me the standard instead of asking for us to come up with substantial and then try to define what substantial is in each category and argue whether 60-40 is not substantial as he says compared to 80-20. It's... It's... It's slippery. Your point is well taken and that's why I think for the most part, if the two classes of employees are of mixed gender, nine times out of ten, the equal pay act should not apply. The candidates for employment come to the VA already certified by the state of Tennessee as either a physician assistant or a nurse practitioner. If you are a nurse practitioner and you're hired by the VA, whether male or female, you are paid according to the nurse practitioner pay scale and the same is true for the physician assistant. Let me ask you just a general question about how the equal pay act works because I really don't know. Here, there's... It's not a class, right? It hasn't been certified as a class. It's just a group? That's correct. When I use the term class, I'm referring to a group. But if I'm just one nurse practitioner and I file suit because I identify one physician assistant and I say, Joe and I are doing the exact same work and I'm getting paid half of what he's getting paid, does the case go forward on that basis or is it a threshold matter where the government be arguing, no, we have to look at the classes that you belong to or would that case go forward? It would be the latter, Your Honor. If, for example, we were to assume that Ms. Yant was the only plaintiff in this case and she identified a sole physician assistant who was paid more and they  we would still be arguing all the same issues because they are members of a group of employees that are mixed gender in each group. Let me just move you quickly because your time is running out. Do you sometime refer to the court of claims as if you're defending or adopting her standard which is there has to be substantial participation by the opposite sex in any category? That's right. And I think by substantial, Judge Christine Miller, I don't believe that she was referring to a set number. I think she was eschewing the notion of a bright line test of a particular number, but rather that substantial in her opinion, I believe, essentially equates to genuine participation by both genders rather than a token hire who might be one or two people. What is genuine participation? I mean, how is that evaluated? I mean, you still have to apply a kind of numerical standard to that, right? No, Your Honor. What I'm saying is that if there's no evidence of token hiring to avoid the equal path, then under the trial court's analysis, it would be genuine or substantial participation by both sexes. Token judges the one thing which struck me, it's not token hiring in order to avoid some kind of statutory imposition. That isn't the sort of token hiring or the kind of traditional aspect that for instance, the nursing profession at one time was almost exclusively women, not as a matter of the token male nurse to avoid the equal path. So it isn't tokenism for this kind of legalistic reason that's behind the entire statutory remedy, is it? Well, I think it is token hiring to avoid the act in the same way that we sometimes see in the context of Title VII actions, gender discrimination actions, where courts will look at, okay, has the prima facie case been demonstrated? Okay, then we move on. The burden shifts to the defendant to prove an affirmative defense of a legitimate ground other than sex that caused the paid disparity. And then the burden shifts one more time back to the plaintiff to show that no, the defense asserted by the employer was merely a pretext for discrimination. And what I'm suggesting is that the harshness of a bright-line rule that mixed gender classes that you will pay the act doesn't apply can be mitigated somewhat by borrowing, if you will, the notion of token hiring for pretextual discrimination. I've got two more quick questions. One kind of a hypothetical, because I'm also and there are a lot of quick balls up in the air in this in terms of what the standard is. But the other question I have a trouble working this out in my mind is looking at both categories. Assume that the first category of nurse practitioners were something you would all say, the district court judge would say, there's not substantial participation, whether it's 95-5 or 99-1. But assume the category you're then measuring against is 59-51 male, 49% women. It seems to me the court of claims here would have said that you do, I mean, the court of claims would find that because one is not substantial participation, then you can go forward. Would the government concede that you do go forward on a case that's 95, where the first case is 95-5, even if the second category you're comparing it to is 51-49? As I understand your hypothetical, if one, if the lower paid group was virtually all of a single gender, and the other comparative group was roughly 50-50, then we submit the proper analysis would be both groups are not of mixed gender, and that the proper, you know, the act will apply, but there's an excellent chance that the employer would have a legitimate defense on the ground other than sex, because all you have to do is look at the higher paid classes. So you would say that would withstand, because you say the test on a primary case for summary judgment purposes is that you have to prove or that he cannot prove, you say if both are not mixed, that would go forward. That's right. So that's different. So what this case comes down to is our deciding, and this is what I'm struggling with, whether the 80-20 grade is sufficient under whatever standard we apply. I mean, if we were to affirm this judge, as I understand it, we as a circuit would be saying that when there's 80% of one sex and 20% of another, almost as a matter of law, there's no equal payout. I would encourage... Am I right about that? I mean, do you agree that's what the government is urging, that we adopt a standard? No, Your Honor. We are not urging the adoption of a bright-line standard. We didn't in the trial court. We don't think the trial court did that. And I certainly would not encourage you to do that now, and I'll explain why, if you'll permit me the time. The reason is that the percentages may be meaningful in a group of significant size. Say you have 100 people, 20% participation of the minority gender, that's 20 people. That's not token hiring, and we all know that. But if you're talking about a group of 100 people, and 20% of that group is of the minority gender, well, that's only one person. And so it's not as clear. So I would not encourage the court to endorse a standard that adopts a bright-line rule based on either a percentage or a raw number, because I think it's going to have to be applied on a case-by-case basis. Well, I appreciate your answer, and I think it is enlightening. The problem that I have with that is it seems to me what you're suggesting is that it's a question of fact, that it's based on the circumstances of the case, which is what the civil circuit said, and that's why we shouldn't grant summary judgment, because it's up to some fact-finder to look at the totality of the circumstances to measure whether or not, whatever we want to call it, the token standard or the standard is met. That's right, Your Honor, and that's exactly what the trial court did. On this summary judgment record,  Miller determined that there was, in fact, substantial participation by both sexes in each employment category, and that there was no evidence whatsoever of any token hiring to avoid the act. So on this summary judgment record, there is no, it may be an issue of fact, but there was no genuine issue of fact. How many people were in the nurse practitioner group? You just mentioned 100, 20% of 100 versus 1 out of 5. How many were in this nurse practitioner group? The precise number escapes me, Your Honor, but it's approximately 55. Okay. Any more questions? Okay. Thank you, Mr. Anderson. Thank you, Your Honor. Anyway, if you look at the trial court's opinion, the very last page, she indicates, she goes through, she talks about substantial participation, and says, the EPA was not intended to remedy such a diffuse situation, and then she says, and I quote, rather, the EPA addresses unequal pay when the groups are not mixed. So what this judge is saying is that any time the groups are mixed, that you can't have an equal pay violation, and I think that's No, I'm there. I'm not sure I agree with you. I mean, the standard she applied was substantial participation. She uses that term, Your Honor, but then specifically says the EPA addresses unequal pay when the groups are not mixed. I was confused about that as well, because she does use the word substantial, which she just essentially invented and placed into the act when it didn't exist, but she does say that the EPA doesn't address situations where the groups are mixed. I think the focus has to be on the group that is being discriminated against, and all the birding shit. It can't be entirely It can't be entirely You acknowledge that it's 50-50 split in the comparator group. There's no I did, Your Honor. I think the primary focus should be on the group that's being discriminated against, the group that's alleging discrimination. I mean, quite frankly, what they should do is they should pay everybody the same for doing the same job, but instead, the nurses are paid less, and the nurses are 80% female. That's more than a super majority, and I know we're throwing out all these terms that talk about size. We really haven't raised, and I suppose it's up before us, the question of why a class with a higher educational standard in general should be paid less than some other class. Is that being pursued elsewhere? I don't know that there's any law out there, Your Honor, that says someone who has a higher education gets paid more than someone who doesn't. The fact of the matter is education and salary do go hand in hand. There's tons of economic studies out there that show the more education you have, the more money that you're going to make. Unless you're a basketball player. Unless you're a basketball player, true. Here it's the inverse of that relationship. Exactly, and I believe it's because of you've got the traditional job of a female nurse being paid less than the traditional male job of the PA, and you have a vast majority in the situation of these women. But we're not starting on the black slate of the traditional jobs where, and indeed, it may very well have been 90-95% in each category. So the real question and I think that this is what occurred to Judge Miller as well as to look at it in the present posture where there is movement back and forth which might not have been available in the past where one category that is being compared with no longer has the substantial difference that Judge Miller referred to for the nurses. Therefore, rather than that there was no longer a significant basis for comparison and correction as existed when these laws were enacted. Well, I certainly would, if that's what Judge Miller did, I would disagree because I think that the fact of the matter is when you have a large majority, a super majority of the female class being paid less for doing the exact same job, it is a violation of the Equal Pay Act. It is directly contrary to what the Equal Pay Act was established to do. And in this case, that's the exact same situation. But the question is, is this an issue of fact? Do we need to put all of the evidence together and have each of these nurse practitioners point to a particular physician's assistant and say, well, we have the same experience, we have the same experience within the VA and that I'm being paid less because I'm a nurse practitioner in a predominantly female group. I see what I got. I look at each of them because 40% of the physician's assistants are female. So what you're left with is a nurse practitioner saying, I'm getting paid less than a class of 40, you know, 400 out of 100 are women. I'm getting paid less than these women as well, which makes no sense. But I'm getting paid less than these 60% males, which does make sense. It's that you're getting paid less money than that. On the basis of gender. The Equal Pay Act has no intent factor into it. There isn't any intent. If we lay out a private picture case, which I believe we did, the burden proof shifts entirely to the other side. The judge essentially said that because both classes are mixed, that we don't have an equal pay case. I think the judge was wrong. I think that there were issues of fact which precluded that determination and we should be entitled to have an entire hearing. I ask that you reverse the trial court. Thank you very much for your time.